Anthony J. SCHERER, Jr.,
Plaintiff-Appellant,

v.

Clarence M. KELLEY, etc., et al.,
Defendants-Appellees.

No. 77–1463.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1978.

Decided Sept. 8, 1978.

Rehearing Denied Oct. 6, 1978.

As Amended Nov. 14, 1978.

---

Rudolphe J. A. deSeife, Glen Ellyn, Ill., for plaintiff-appellant.

Mark N. Mutterperl, Civ. Div., Dept. of Justice, Washington, D. C., for defendants-appellees.

Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.[1]

SWYGERT, Circuit Judge.

Plaintiff Anthony J. Scherer, Jr. brought this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, to compel four federal agencies to release documents allegedly relevant to him. The issue on appeal is whether the district court erred when, following an *in camera* examination, it found that the documents were properly withheld under certain exemptions contained in section 552(b) of the Act.[2]

1. The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

2. The following are those portions of the Act that are relevant to this appeal:
    (a) Each agency shall make available to the public information as follows:
    \* \* \* \* \* \*
    (3) Except with respect to the records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.
    (4)(A) . . .
    \* \* \* \* \* \*
    (B) On complaint, [a] district court of the United States . . . has jurisdiction . . . to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.
    \* \* \* \* \* \*
    (E) The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complaint has substantially prevailed.

While the outcome of Scherer's appeal hinges on this court's interpretation of the relevant exemptions of the Act and on our review of the district court's application of those exemptions to the documents in question, it is first necessary to consider a jurisdictional question that surfaced on appeal. At issue is the Government's contention that Scherer properly appealed only that portion of the district court's finding that pertains to the FBI. The Government thereby argues that this court lacks jurisdiction to consider those documents compiled by the other three agencies. To understand this dispute, the somewhat complicated procedural history of the case must be set forth in detail.

I

Between May and August 1975 Scherer contacted the FBI, the Customs Service, the

\* \* \* \* \* \*
    (b) This section does not apply to matters that are—
    \* \* \* \* \* \*
    (2) related solely to the internal personnel rules and practices of an agency;
    \* \* \* \* \* \*
    (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
    \* \* \* \* \* \*
    (7) investigatory records compiled for law enforcement purposes but only to the extent that the production of such records would
    . . .
    \* \* \* \* \* \*
    (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel;
    \* \* \* \* \* \*
    Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.

Treasury Department Bureau of Alcohol, Tobacco and Firearms, and the Secret Service and requested that each agency provide him with all the documents in its files which concerned him.[3] After a series of correspondence with Scherer, each agency compiled the requested material and examined it to determine whether any portion should be excised because of its inclusion within one of the sections of the Freedom of Information Act which provided for an exemption from disclosure. After each agency deleted what it believed to be exempted material, it forwarded the remaining documents to Scherer with an explanation of the action it had taken.[4]

After unsuccessfully appealing each agency's action through administrative channels, Scherer, acting *pro se*, commenced the following action in the United States District Court for the Northern District of Illinois, attempting to obtain those materials the agencies had withheld. On March 18, 1978 Scherer filed a complaint against the Customs Service. That action was assigned cause no. 76 C 1052. At the same time Scherer filed a complaint against the FBI. That action was assigned cause no. 76 C 1053. Each case was assigned to a different district judge and was initially treated as an entirely separate case. On October 28, cause no. 76 C 1053 (with the FBI as defendant) was reassigned to the judge who was at the time hearing cause no. 76 C 1052 (the Customs Service case). No formal order of consolidation was made, however, to officially combine the two cases and, therefore, the two case numbers continued to coexist. In an attempt to eliminate confusion, the district judge, who was now assigned both cases, allowed Scherer to amend his complaint which had originally named only the Customs Service as defend-

ant, *i. e.*, cause no. 76 C 1052. By such amendment Scherer added the FBI, the Bureau of Alcohol, Tobacco and Firearms, and the Secret Service as defendants so that now, cause no. 76 C 1052 included all four agencies. Cause no. 76 C 1053 remained intact with only the FBI as defendant.

After examining the documents from the four agencies, the district court entered the following order on the record of *both* cause numbers:

> The Court has examined all of the documents presented by the four government agencies defending this action (Bureau of Customs, the Federal Bureau of Investigation, the Secret Service Division of the Department of the Treasury, and the Bureau of Alcohol, Tobacco and Firearms) and finds after an *in camera* inspection that those documents withheld from the plaintiff were properly exempt from disclosure under the exemptions claimed pursuant to 5 USC 552(b). The plaintiff is not entitled to an index of the withheld documents nor to his costs in the case. Therefore, this cause will be dismissed with prejudice.

After his motion for reconsideration was denied, Scherer, still acting *pro se*, filed a notice of appeal. In the caption of that notice Scherer listed the defendants as the "Federal Bureau of Investigation, *et al.*," and labelled the notice as appealing "No. 76 C 1053," although that case number named only the one agency defendant, the FBI.

After filing his notice of appeal Scherer obtained counsel. However, nothing was done to resolve the confusion which still remains because of the two cause numbers. In addition, only the record in no. 76 C 1053, pertaining to the FBI, was originally transferred to this court. After an order

---

**3.** Each of these agencies conducted various investigations of Scherer's activities because of reports from confidential sources that he was allegedly involved in the theft and smuggling of guns and ammunition and in their distribution to foreign political groups.

**4.** The FBI had twelve documents pertaining to Scherer totaling 33 pages of which it released excised copies totaling 25 pages. The Customs Service had 17 documents. It released two without deletions, 12 with deletions, and withheld three entirely. The Bureau of Alcohol,

Tobacco and Firearms had a file consisting of 5,550 pages on Scherer. However, the Bureau states that only 3,137 pages actually related to Scherer. The director of the Bureau swears by affidavit that he released 2,992 pages to Scherer of which 19 pages had deletions, while withholding 145 pages entirely. Scherer, however, alleges that he received only 2,819 pages. The specific figures relating to the action taken by the Secret Service have not been made known to this court.

of this court dated December 19, 1977, some, but apparently not all, of the documents in the district court record of no. 76 C 1052 were transferred to this court as a supplement to the record on appeal of no. 76 C 1053. Just prior to oral argument, however, the Government moved to supplement the record further with the affidavits of the representatives for the Customs Service and the Bureau of Alcohol, Tobacco and Firearms which were part of the record in no. 76 C 1052 before the district court. The Government stated that while it still contends that only the FBI is involved in this appeal, if this court determines that the documents from all four agencies must be considered, such consideration must be conducted in light of the affidavits detailing those exemptions upon which each agency relied. This court by order of April 10 deferred ruling upon the Government's motion until after oral argument. We turn now to a consideration of that motion in light of the jurisdictional snarl with which it is entangled.

## II

■ Rule 3 of the Federal Rules of Appellate Procedure sets forth those procedures an appellant must follow in order to transfer his case from a federal district court to a court of appeals.[5] Although those requirements have been made as burdenless as possible while continuing to balance a losing party's need for appellate review against the prevailing party's right to seek repose in his favorable judgment, unintentional mistakes are occasionally made in the content of a notice of appeal. Such mistakes are most prevalent where, as in the instant case, an appellant is acting pro se. For this reason notices of appeal are entitled to a liberal construction where the intent of the appellant is apparent and

the adverse party is not prejudiced. *See Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ In this case, Scherer clearly intended to appeal the district court's finding as it pertained to all four agencies. He captioned the defendants as the "Federal Bureau of Investigation, *et al.*" which he could reasonably have believed was sufficient to include the four agencies.[6] Additionally, it was reasonable for Scherer to believe that the *"et al."* would alert the Government attorney that Scherer intended to seek appellate review of all documents concerning him. Since Scherer had intended to secure all government documents from the beginning of his long administrative and judicial course, there is no reason to believe that he intended to stray from that route at the appellate level.

What is perhaps more significant is the wording of the judgment to which Scherer referred in his notice of appeal. Even though that judgment of dismissal was entered on the record of cause no. 76 C 1053 (the single FBI defendant), it specifically referred to the case as that in which "the four government agencies [were] defending [the] action . . . ." Significantly, Rule 3 states that a party must "designate the judgment, order, or part thereof appealed from . . . ," while making no reference to an individual case number. The obvious reason for the wording of the rule is that its purpose is to ensure that each party is aware of the judgment in dispute rather than a number which when separated from the judgment to which it refers, is meaningless.

We think that the discussion in *Crump v. Hill,* 104 F.2d 36, 37–38 (5th Cir. 1939), of former Rule 73 of the Federal Rules of Civil

5. The pertinent parts of Rule 3 read as follows:
   (a) Filing the Notice of Appeal. An appeal permitted by law as of right from a district court to a court of appeals shall be taken by filing a notice of appeal with the clerk of the district court within the time allowed by Rule 4.
   \* \* \* \* \* \*
   (c) Content of the Notice of Appeal. The notice of appeal shall specify the party or

parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.

6. The use of *"et al."* is particularly significant in this case as Scherer was acting *pro se.* When he drafted his notice of appeal, Scherer undoubtedly referred to legal texts where the accepted usage of *"et al."* is pervasive.

Procedure, the identically worded predecessor to Rule 3 with which we are concerned, is especially applicable to this case.

> [I]t would we think be a harking back to formalistic rigorism of an earlier and outmoded time, as well as a travesty upon justice, to hold the extremely simple procedure required by the Rule is itself a kind of Mumbo Jumbo, and that the failure to comply formalistically with it defeats substantial rights.

*Cf. Great Lakes Stamp & Mfg. v. Reese Finer Foods, Inc.,* 402 F.2d 346 (7th Cir. 1968) (notice of appeal referring to initial judgment instead of amended final judgment held sufficient). The "substantial right" which would in this case be defeated is Scherer's right to appellate review in his claims under the Freedom of Information act. Since the purpose of the Act is to ensure disclosure and not to aid in suppression of information pertaining to a private party, *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), we cannot allow the frustration of the clear intent of the Act because of such a technical error as assigning an incorrect number to a notice of appeal when a party has clearly manifested his intention by correctly referring to the judgment he disputes.

Because we find that all four agencies are properly before this court, we grant the Government's motion to supplement the record. Furthermore, the entire record in cause no. 76 C 1052 has now been supplemented to that of no. 76 C 1053 so that this court may have the benefit of all documents which may be pertinent to either party's claims on appeal. By so doing both the Government and Scherer will be equally protected against any prejudice which might have accompanied the prior confusion created by the two case numbers.

### III

We turn now to the propriety of the district court's finding that those documents withheld in their entirety and the excised portions of those released by the four agencies fell within the sections of the Act exempting their disclosure. The gravamen of Scherer's contention on appeal is that the district court could not responsibly have made such a finding because the agencies had not satisfied their burdens of specifically detailing those exemptions upon which they relied. Scherer alleges that each agency failed to provide the court with an itemized index so that the court could cross-reference the excised portions of the material with the corresponding exemption claimed. Without such an index, he argues, the court could not have determined whether each individual file portion had been properly deleted.

Scherer's argument is sound so far as it accurately restates the requirements placed upon an agency that is attempting to sustain its action under the Act in a *de novo* review in district court. 5 U.S.C. § 552(a)(4)(B). *See also Cuneo v. Schlesinger,* 157 U.S.App.D.C. 368, 484 F.2d 1086 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). However, we find that the FBI, the Customs Service, and the Bureau of Alcohol, Tobacco and Firearms all provided the court with a sufficiently detailed means of cross-reference. Those three agencies submitted sworn affidavits which comprehensively set forth the exemptions upon which each agency had relied when it excised portions of its file pertaining to Scherer and set forth the reasons underlying their use.

■ The first exemption relied upon was section 552(b)(2) which allows deletions for internal administrative markings, rules, and practices. The exemption is claimed here for administrative markings such as file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references. As was determined in *Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977), in which identical claims were made for the use of section 552(b)(2), these are matters "in

which the public interest is minimal and which fall within the ambit of Exemption 2."

■■■ The other categories of exemptions are sections 552(b)(7) [(C), (D), (E), and (F)] which protect a citizen's privacy, the identity of an informant, investigative techniques, and the safety of law enforcement personnel. As was also discussed in *Maroscia, supra* at 1002, and was implicit in each of the affidavits submitted by the three agencies, in a case such as Scherer's where a file contains "investigatory records compiled for law enforcement purposes," most of the information has been "acquired under an express assurance of confidentiality or in circumstances where such an assurance may reasonably be inferred." This court has previously described why such information falls within the exemption of sections 552(b)(7)(C) or (D).

> It is proper that such material be withheld in order not only to protect those citizens who voluntarily provide law enforcement agencies with information, but also to insure that such persons remain willing to provide such information in the future. Furthermore, references to third parties may be properly deleted to protect their privacy and to minimize the public exposure or possible harassment of those persons mentioned in the files. Their claim to privacy under Exemption 7(C) outweighs the minimal public interest which would be served by release of their names.

*Maroscia v. Levi,* 569 F.2d at 1002. In light of the serious allegations against Scherer,

the need to protect those persons who informed the agencies about Scherer's activities cannot be questioned. Furthermore, in the event any similar investigation might be reinstituted, the willingness of these or other reliable informants should be ensured. The sections protecting both the identities and the privacy of the informants, therefore clearly apply.[7]

■ The final claimed exemption, section 552(b)(7)(F), may be used to withhold documents for the protection of law enforcement personnel. Since law enforcement agents have been involved throughout Scherer's case and their need for protection exists as noted above, section 552(b)(7)(F) is also applicable to those documents recording the Scherer investigation.

■■■ After listing the applicable exemption sections, the three affidavits (in the FBI case a second affidavit) present detailed descriptions of how those exemptions can be cross-referenced to the documents. The FBI affidavit explains a color code utilizing yellow and red markings while the other two affidavits rely on either dates (for letters or memoranda) or content descriptions. Even though these affidavits would in themselves be sufficient, both the FBI and the Bureau of Alcohol, Tobacco and Firearms individually labelled and indexed the material. Scherer's argument that the district court could not have been able to cross-reference exemptions and deletions is, therefore, without merit as far as it pertains to the FBI, the Customs Service, and the Bureau of Alcohol, Tobacco and Firearms. Furthermore, this court has ex-

7. Scherer argues, without knowing, that some of the information contained in the agencies' files is no longer exempt as confidential because the source has relinquished his or her confidentiality by previously testifying at Scherer's criminal trial. Without revealing whether any such source is included in the material, we reject Scherer's argument. Because a person may have given testimony at a trial on a specific topic does not mean that all information offered by that source upon a guarantee of confidentiality automatically becomes available to the person to whom it relates. The nontestimonial information may be far more damaging than any testimony freely given and may place the source in great peril. A source would be unlikely to testify on any subject if he or she knew that by so doing every transcription made by an investigative agent regarding their conversations could be released to the party about whom the source was informing. If Scherer's argument were to be adopted it would shift that delicate balance achieved by the Act between the interest of a private citizen and that of an investigative agency to the obvious detriment of both the agency and the confidential source whom the Act purports to protect.

amined those three agencies' documents in light of the applied exemptions. We agree with the district court's finding that those documents and portions were legally exempt under the Act.[8]

The circumstances surrounding the Secret Service documents, however, require explanation. The Deputy Director of the Secret Service supplied the court an affidavit which was attached to the documents and which certified only that those documents comprised the complete Scherer file. A letter was then sent directly to the district judge conducting the *in camera* examination. That letter contained a detailed, color coded index which would have enabled the judge to cross-reference the deletions with the exemption sections relied upon by the Secret Service. In addition, the letter comprehensively set forth the justification for the use of those sections in Scherer's case.

At oral argument the Government admirably conceded that it could not state unequivocally that the district court possessed the letter's index at the time it had examined the documents. That uncertainty, however, was resolved during our *in camera* inspection. The Secret Service documents were delivered sealed to this court with the district judge's stamped signature across that seal. The packet contained the documents with the Deputy Director's letter attached. It is obvious, therefore, that the district judge would not have included the letter with the documents had he not used it as an index during his inspection.

Although we do not condone the irregular procedure used in this case by the Secret Service, we do not believe the letter clearly sufficed as an index. Furthermore, after reviewing the documents we hold that the district court's finding that the portions deleted were legally exempt under the Act was correct.[9]

Scherer's contention that he should have been awarded his attorney's fees and litigation costs is without merit. Under section 552(a)(4)(E) a court may award such costs where a "complainant has substantially prevailed" in his claim. Scherer has not "substantially prevailed" nor does his case present any unusual circumstances which might allow awarding of costs. We also find no support in the record for Scherer's allegation that the district judge misdirected him or was in any way improper in the manner he adjudicated this case. Rather, we find that the district judge did an admirable job in attempting to resolve the confusion created by the *pro se* filings.

The judgment of the district court is affirmed.

---

8. The only instance in which material does not fall within the exemptions claimed, *i. e.*, sections 552(b)(2) and (b)(7)(D), appears in a document numbered "8" by the FBI. However, the one paragraph in that document withheld in its entirety which might have been released is substantially identical to a paragraph in a document which was released to Scherer, *i. e.*, document "10." The only difference between these two paragraphs is the way in which each is gramatically structured. It was proper, therefore, for the FBI to withhold that paragraph as not "reasonably segregable" from the remainder of the document which had legally been withheld. Scherer was certainly not prejudiced by the FBI's action.

9. The exemptions relied upon by the Secret Service and the reasons underlying their use correspond with those claimed by the other three agencies, *i. e.*, sections 552(b)(2) and (b)(7) [(C), (D), and (E)].

    Additionally, the Secret Service exempted some portions under section 552(b)(5) as inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the Secret Service.