**Albert BATES, Stephen Gaskin, Plenty–USA and The Foundation**

v.

**UNITED STATES DEPARTMENT OF JUSTICE and United States of America.**

**No. 1–89–0032.**

United States District Court, M.D. Tennessee, Columbia Division.

May 3, 1991.

Reconsideration Denied May 17, 1991.

Albert Bates, Albert Bates Professional Corp., Summertown, Tenn., for plaintiffs.

Michael L. Roden, Asst. U.S. Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

WISEMAN, Chief Judge.

This case involves a dispute over the scope of information exempt pursuant to 5 U.S.C. § 552(b)(7)(D) of the Freedom of Information Act ("FOIA"). The plaintiffs have requested documents from the Federal Bureau of Investigation ("FBI") that the Department of Justice ("Department") claims are statutorily exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(D).

Under exemption 7 of FOIA, documents may be withheld from disclosure if they are:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information ... (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source....

5 U.S.C. § 552(b). On February 7, 1991, the Court upheld the Department's exemptions pursuant to § 552(b)(7)(C) as well as those deletions pursuant to exemption 7(D) that permit the FBI to withhold "the identity of a confidential source."

But the Court denied the Department's Motion for Summary Judgment because it was devoid of any analysis about the nature of the FBI's criminal or national security investigatory purpose under exemption 7(D). Special Agent Robert Burnham of the FBI office in San Juan, Puerto Rico simply claimed that the request for an investigation by an agency of a foreign government "involve[s] all violations for which the FBI has jurisdiction." Agent Burnham Affidavit at 8. In the Court's previous order, the Department failed to advise the Court about what specific criminal violations were at stake. That lack of information caused the Court to deny the Department's motion, since the exemption 7(D) test relating to a criminal or national security investigatory purpose is stricter than the initial exemption 7 threshold test to determine whether a "law enforcement purpose" is at stake. *Pratt v. Webster*, 673 F.2d 408, 424 n. 39 (D.C.Cir.1982); *Dunaway v. Webster*, 519 F.Supp. 1059, 1080 (N.D.Cal.1981). *See also Branch v. FBI*, 658 F.Supp. 204, 210 (D.D.C.1987).

Pursuant to the February 7, 1991 order of this Court, the FBI has provided an additional affidavit pertaining to whether the investigation was related to a criminal or national security intelligence investigation. Special Agent James M. Krupkowski of the FBI maintains that all the information supplied by confidential sources should be exempt from disclosure because the information was obtained during the course of "a criminal investigation."

At the outset, the FBI concedes that, at least on the face of the relevant documents located pursuant to the plaintiff's FOIA request, the foreign police agency's request did not involve either a criminal investigation or a lawful national security intelligence investigation. But piecing together scraps of information, reading between the lines of the request, and, strangely enough, relying the results of its investigation, the FBI concludes that "one can reasonably infer that the foreign policy agency was legitimately concerned about potential criminality under its jurisdiction concerning marihuana."

Agent Krupkowski raises a number of arguments to support the notion that this exemption is based on a criminal investigation. First, he argues that the foreign police agency's request for a "confidential" record check requires that any information

compiled as a result of the search must be exempt from disclosure. Second, he notes that the subjects of the request stayed at a location unrelated to their work, "attracted suspicious characters to [their] site," and believed smoking marihuana was not harmful. Finally, he contends that the results of the FBI's investigation for possible violation of trafficking of a controlled substance "was enhanced by the fact that FBI record checks" produced corroborating evidence.

Although the FBI is per se a "criminal law enforcement authority," *Keys v. United States Dept. of Justice*, 830 F.2d 337, 343 (D.C.Cir.1987), the Department's supplementary affidavit still is inadequate to specify exactly how this particular investigation bears any relationship to a legitimate criminal investigation. Much of the information the FBI has compiled in this case is general information gathering which cannot be related to good faith enforcement of the statutes cited as the basis for the compilation of the material. *Dunaway*, 519 F.Supp. at 1080.

■ Obviously, a request for confidential information by a foreign police agency is insufficient to trigger the protection of exemption 7(D). If the Court adhered to that broad a reading of the statute, the FBI would be given a license to explore any possible subject, as long as the foreign government's request was confidential, and then seek the shelter of FOIA to avoid disclosure. That "no holds barred" investigatory approach would reward the FBI with the *de facto* authority to examine for foreign governments all the topics that it would not ordinarily be able to do so for the United States.

The drafters of the statute had a more circumscribed purpose in mind for exemption 7(D) than the FBI suggests. Exemption 7(D) confidentiality only applies where the release of information could reasonably be expected to disclose the identity of a confidential source. But a request for confidentiality by a foreign police agency is not in and of itself equivalent to a criminal or national security investigation, according to the relevant statutory language. Exemption 7(D) requires that the FBI must

satisfy two separate hurdles to provide the required nexus between the purpose of the investigation and the agency's power to withhold documents. First, any information withheld by the agency must be deemed "records or information compiled for law enforcement purposes." Second, the agency must prove that the record or information withheld by FBI was compiled "in the course of a criminal investigation." While it may be significant in some instances, a request for confidentiality alone is not an appropriate basis upon which to withhold information pursuant to exemption 7(D).

The FBI also relies on three alleged facts to support the notion that a legitimate drug enforcement investigation was underway. To begin, the fact that the subjects of the request were noted in a location unrelated to their work is insignificant. The FBI hardly could find the time to launch investigations for foreign police agencies of all those Americans abroad who allegedly were observed at a place unconnected to one purpose of their travel. That fact alone does not suggest violation of any United States criminal laws. Contrary to the FBI's assertion, the foreign police agency's request mentions absolutely nothing about whether the subjects "attracted suspicious characters to [their] site." While that characterization may be Agent Krupkowski's conclusion, no facts in the initial request can support it. Further, the allegation that the subjects of the request believe that smoking marihuana is not harmful also cannot be used as a basis for a criminal investigation in and of itself. Significantly, despite having all those supposedly incriminating facts in its possession eight years ago, the FBI did not specify that drug trafficking was the object of its records search.

■ Finally, the FBI cannot use information it obtained during the course of its investigation as a bootstrap to legitimize its conduct. That "ends justify the means" argument has all the logical force of its bankrupt confidentiality theory discussed *supra*. The FOIA statute requires a lawful, valid criminal investigatory purpose before all information obtained from confidential sources may be withheld. The FBI

cannot rely on whatever tidbits it dredged up as a result of its wide-ranging search to satisfy the "criminal investigation" requirement of exemption 7(D).

In sum, the Department cannot claim the second prong of exemption 7(D) applies in this case. Accordingly, unless the information claimed as exempt by the FBI would lead to the identification of a confidential source pursuant to the first prong of exemption 7(D), it must be released. The government can withhold from the plaintiffs any "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information ... could reasonably be expected to disclose the identity of a confidential source...." 5 U.S.C. § 552(b). The FBI must immediately release all other disclosable information contained in Exhibits A, B, E, F, and H that it wrongfully contends fall under exemption 7(D).

## II.

Also pursuant to the February 7, 1991 order of this Court, the plaintiffs were awarded reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E). Albert K. Bates presented an affidavit on February 25, 1991 detailing his fees in this case. In his affidavit, Bates stated that he performed 138.41 hours of work on this case and other professional staff performed an additional 44.25 hours of work. Bates requests an hourly rate of $125.00 for his time and $50 per hour for additional professional staff time. The government has not challenged Bates' request.

The Court finds that Bates should receive $100 per hour, and his staff should receive $20 per hour, since that rate is consistent with that charged by Nashville attorneys and professional staff of similar experience for federal court litigation. The Court also grants Bates' request for $745.00 in filing and docket fees and travel expenses.

For the foregoing reasons, Bates is entitled to a judgment against the United States Department of Justice in the amount of $15,471, representing the reasonable amount of attorney's fees and other costs he incurred during this litigation.

An appropriate order will be entered.

## ORDER

In accordance with the memorandum contemporaneously entered, the Court finds that any records or information furnished by a confidential source pursuant to 5 U.S.C. § 552(b)(7)(D) of the Freedom of Information Act cannot be withheld from the plaintiffs since this information collected by the Federal Bureau of Investigation was not compiled either in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation. The government can only withhold from the plaintiffs any "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information ... could reasonably be expected to disclose the identity of a confidential source...." 5 U.S.C. § 552(b). Accordingly, the FBI must immediately release all other disclosable information contained in Exhibits A, B, E, F, and H that it wrongfully contends are exempt under exemption 7(D).

Pursuant to 5 U.S.C. § 552(a)(4)(E), Bates is entitled to a judgment against the United States Department of Justice in the amount of $15,471, representing the reasonable amount of attorney's fees and other costs he incurred during this litigation.